UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL KNUDSON, personally and individually,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>PRIMARY RESIDENTIAL MORTGAGE, INC.,<br><br>　　　　　　Defendant. | Case No. 1:10-CV-431-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is the Motion for Summary Judgment (Dkt. 20) filed on March 11, 2011, by Defendant Primary Residential Mortgage, Inc. Plaintiff Paul Knudson, who appears pro se, filed a response on March 29, 2011, and Defendant filed its reply on April 15, 2011. The Court reviewed the record and determined that the motion would be decided before the Court without oral argument. (Dkt. 30.) The Court finds that judgment should be granted in favor of Defendant for the reasons explained below.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTS

On December 31, 2001, Plaintiff Paul Knudson and his wholly-owned entity J.R. Development, LLC (collectively, "Knudson"), entered into a Construction Loan Agreement to develop the Bishop Ranch Property. (Decl. of K. Knudson ¶ 3-4, Ex. 1 Dkt. 22; Aff. of Knudson ¶ 3 Dkt.25-2.) A Promissory Note was entered into in conjunction with the 2001 loan agreement, and the loan was secured by a Deed of Trust encumbering the Bishop Ranch Subdivision. (Decl. of K. Knudson ¶ 4–5, Dkt. 22.) A series of loan modifications extended the term of the 2001 Note and increased the amounts loaned under the Construction Loan Agreement. (Decl. of K. Knudson ¶ 6–7, Dkt. 22.)[1] The Construction Loan Agreement is comprised of Notes with loan numbers 888-100 and 888-400. (*Id.*)

Plaintiff Primary Residential Mortgage, Inc. ("PRMI") determined that as of December 22, 2007, Knudson was in default of his obligations under the Construction Loan Documents, as well as under other obligations owed to PRMI. (Decl. of K. Knudson ¶ 9, Dkt. 22.) Kenneth Knudson,[2] the Vice President of Finance for PRMI, reviewed Knudson's loan relationship with PRMI to explore solutions for resolving Knudson's defaults under the Construction Loan Documents, and prepared a summary of his findings

---

[1] Exhibits 1–4 attached to the Declaration of Kenneth Knudson comprise the above mentioned documents, and are collectively referred to as the Construction Loan Documents. Knudson does not dispute that Exhibits 1–4 are the Loan Documents that provided funding for the development of Bishop Ranch Subdivision. (Aff of Knudson ¶ 8 Dkt. 25-2.)

[2] Kenneth Knudson happens to be Plaintiff Paul Knudson's brother. *See Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 265 (Idaho 2007).

and recommendations. (Decl. of K. Knudson ¶ 9–10, Ex. 5, Dkt. 22.) Knudson did not respond until April 22, 2008. In his response, Knudson requested that PRMI advance additional funds for work performed by subcontractors hired to improve the Bishop Ranch Subdivision. (Decl. of K. Knudson ¶ 13–14.)

As a condition of the Construction Loan Documents, Knudson was required to provide lien waivers when he requested funds to reimburse subcontractors, which Knudson failed to do in conjunction with the April 22, 2008 request. (Decl. of K. Knudson ¶ 13–14, Dkt. 22.) The Construction Loan Agreement specifically required that Knudson attach to each application for an advance of funds executed acknowledgments of payments of all sums due and lien releases from any party having lien rights. (Decl. of K. Knudson Ex. 1 at 10, Dkt. 22-1.) The Construction Loan Agreement prohibited the existence of a condition constituting a default under the Agreement at the time of any advance request. (Decl. of K. Knudson Ex. 1 at 10, Dkt. 22-1.) If Knudson was not in compliance with the provision of the Construction Loan Agreement, the loan documents specified that PRMI may, at its option, "refuse to make further Advances, [or] may accelerate the indebtedness . . . ." (Decl. of K. Knudson Ex. 1 at 11, Dkt. 22-1.) As of April 22, 2008, PRMI declined to advance additional funds to Knudson under the Construction Loan Documents. (Decl. of K. Knudson ¶ 16, Dkt. 22.)

The Construction Loan Documents contained a cross-default clause specifying that if the Borrower (Knudson) failed to comply with any obligation owed to PRMI in any other agreement, such failure would constitute a default under the Construction Loan

Documents. (Decl. of K. Knudson Ex. 1 at 14, Dkt. 22-1.) In addition, if the Bishop Ranch Subdivision no longer provided adequate collateralization, such defective collateralization constituted an event of default. (Decl. of K. Knudson Ex. 1 at 15, Dkt. 22-1.) Finally, the filing of any lien by a subcontractor constituted an event of default. (Decl. of K. Knudson Ex. 1 at 13, Dkt. 22-1.)

On August 3, 2009, PRMI sent a Notice of Default pursuant to the provisions of the Deeds of Trust, which specified the defaults, actions required to cure, the cure period, and the consequences of failure to cure. (Decl. of K. Knudson ¶ 18, Ex. 8, Dkt. 22.) The Notice of Default specified that five loans were in default for non-payment, with a total amount due to cure the defaults of $1,497,586.83. The Notice of Default specified defaults under Loan Numbers 888-101; 888-124; 888-300; 888-400; and 888-433. (Decl. of K. Knudson Ex. 8, Dkt. 22-9.) Specifically, Knudson failed to make monthly payments on Loan No. 705-1000649 between January and July of 2008; and failed to make monthly payments on Loan No. 888-101 after April 1, 2007; on Loan No. 888-124 after December 1, 2006; and on Loan No. 888-433 after April 7, 2007. (Decl. of Arnoldus ¶¶ 6–7 Dkt. 28.)

PRMI notified Knudson that each of the Notes contained cross-default and cross-collateralization provisions. (Decl. of K. Knudson Ex. 8, Dkt. 22-9.) In addition, Anderson Excavating, LLC had filed a Notice of Claim of Lien against the Bishop Ranch Property on July 9, 2008. (Decl. of K. Knudson Ex. 7, Dkt. 22-7.)

After failing to cure the defaults, PRMI, as beneficiary under the Trust Deeds,

**MEMORANDUM DECISION AND ORDER - 4**

instructed Alliance Title & Escrow Corp., as trustee, to sell certain real property in the Bishop Ranch Subdivision to satisfy Knudson's obligations under the Construction Loan Documents. (Decl. of K. Knudson ¶ 19, Dkt. 22.) Alliance Title & Escrow Corp. conducted duly noticed Trustee's Sales on April 1, 2010 and April 15, 2010. (Decl. of K. Knudson ¶ 20, Dkt. 22.) PRMI credit bid the sum of $1,034,582.03 for the foreclosed properties and was the successful buyer. (Decl. of K. Knudson ¶ 20, Ex. 9, Dkt. 22.)

On May 27, 2010, Knudson demanded that PRMI pay the final amounts due to Knudson's subcontractors. (Decl. of K. Knudson ¶ 17, Ex. 7A, Dkt. 22.) Knudson acknowledges the 2001 Construction Loan Agreement, but claims he was never in default of its terms. (Aff. of Knudson ¶ 8, Dkt. 25-2.) According to Knudson, PRMI's failure to fund draws and his claim for such is related to a prior lawsuit, *Vanderford Co. Inc. v. Knudson*, 165 P.3d 261 (Idaho 2007).

The prior lawsuit was commenced in 2001, when PRMI[3] brought an action against Knudson and his LLC to recover $500,000 in construction loan funds and foreclose on its trust deeds related to other real property. (Aff. of Knudson ¶ 4–5, Dkt. 25-2.) At the same time, PRMI and Knudson entered into the Construction Loan Agreement to fund the Bishop Ranch Development. (Aff. of Knudson ¶ 4.) The Idaho Supreme Court found that the Notes did not incorporate the real property as collateral for the loans, and therefore PRMI could not foreclose. The court remanded the case for a new trial. *Vanderford Co.,*

---

[3] The Vanderford Company was PRMI's predecessor.

**MEMORANDUM DECISION AND ORDER - 5**

*Inc.*, 165 P.3d at 273.

PRMI and Knudson settled all issues between them concerning the *Vanderford* lawsuit by entry of judgment dated April 29, 2002. (Aff. of Knudson ¶ 5, Dkt. 25-2.) Knudson denies that he was "in default" with respect to the terms of the judgment entered against him. (Aff. of Knudson ¶ 6, Dkt. 25-2.) Concerning the 2001 Construction Loan Agreement, Knudson similarly states that he "does not believe that he was 'In Default' on December 22, 2007, or at any time during the 'times material to this action.'" (Aff. of Knudson ¶ 8, dkt. 25-2.) Rather, Knudson claims that he and PRMI entered into an agreement in December of 2007 to change the scope of work for the Bishop Ranch Property, and fund the improvements by rolling lot proceeds from Phase III of the development to fund Phase IV of the development. (Aff. of Knudson ¶¶ 14, 15, 18, Dkt. 25-2.)

Further, Knudson asserts that PRMI funded two separate $40,000 payments toward Phase IV development costs after April 22, 2008, yet did not issue a notice of default until August 3, 2009. (Aff. of Knudson ¶ 22–23, Dkt. 25-2.) Knudson claims that PRMI's failure to fund the draw requests was an attempt to extract concessions and demand that Knudson pay the *Vanderford* judgment. (Aff. of Knudson ¶¶ 21, 25, Dkt. 25-2.) Knudson also contends he "complied with the lien waiver process that PRMI required," but did not provide documentation of lien waivers signed by subcontractors hired for the Bishop Ranch Property. (Aff. of Knudson ¶ 19, Dkt. 25-2.) The "Final Draw Demand Letter" dated May 27, 2010, which requested over $100,000 in funds, had copies of invoices

**MEMORANDUM DECISION AND ORDER - 6**

attached but indicated that Knudson "will obtain complete, final unconditional lien waivers for each payment from subcontractors and forward to PRMI." (Decl. of K. Knudson Ex. 7A, Dkt. 22-8.)

## DISPOSITION

**1. Summary Judgment Standards**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." *Id*. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

**MEMORANDUM DECISION AND ORDER - 7**

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

**2. Plaintiff's Claims**

Knudson's Complaint alleges first that PRMI breached the Construction Loan Agreement by failing to pay draws for authorized work despite Knudson being in compliance with the Construction Loan Agreement. Knudson alleges that PRMI wrongfully refused to pay draw requests for the Bishop Ranch Development until Knudson paid PRMI the judgment it had been awarded against Knudson in the prior

**MEMORANDUM DECISION AND ORDER - 8**

unrelated lawsuit, *Vanderford Co. Inc. v. Knudson*, 165 P.3d 261 (Idaho 2007).

Knudson also includes a claim for unjust enrichment, claiming that by authorizing the improvements to Bishop Ranch and not paying for them, PRMI wrongfully obtained the benefits of the improvements once it foreclosed on the real property. Knudson claims he has suffered damages as a result.

### A. *Breach of Contract*

To prove a claim for breach of contract, Knudson bears the burden to show, by a preponderance of the evidence, the following: (1) a contract, (2) Knudson's own performance, (3) breach of the contract by PRMI, and (4) damages. *See Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).[4]

There is no dispute that the Construction Loan Agreement forms a contract between the parties. Nor is there any dispute that the Construction Loan Agreement contains a cross default provision, a defective collateralization provision, and a requirement that Knudson provide lien waivers with his draw requests. The Construction Loan Agreement also set forth all events that constituted defaults under its terms.

Although Knudson asserts he "did not believe" he was in default under the Construction Loan Agreement, he has provided no evidence other than his "belief." On the other hand, PRMI provided the affidavits of Kenneth Knudson and Nancy Arnoldus

---

[4] PRMI asserts Utah law governs interpretation of the Construction Loan Agreements and all other loan documents. (Reply Mem. at 7, Dkt. 27.) The Construction Loan Agreement contains a choice of law provision and states Utah law applies. (Decl. of K. Knudson Ex. 1 ¶ XVI, Dtk. 22-1.)

**MEMORANDUM DECISION AND ORDER - 9**

setting forth the following: (1) Knudson failed to pay according to the provisions of five other loan agreements; (2) by virtue of the holding in *Vanderford*, insufficient collateral secured the debts owed to PRMI; (3) Knudson failed to provide lien waivers in support of over $100,000 in draw requests; and (4) one of the subcontractors hired to provide labor and materials had filed a lien against the Bishop Ranch Property on July 9, 2008.

The Construction Loan Agreement unambiguously provided that no event of default could exist at the time of any advance, and if it did, PRMI at its sole option had the contractual right to withhold further disbursement of loan funds and take possession of the property. Nowhere does the Construction Loan Agreement "require" PRMI to pay for improvements if Knudson was otherwise in default. While Knudson may have believed he was compliant with the Construction Loan Agreement, even giving Knudson the benefit of all inferences drawn in his favor, he has not provided evidence to refute that he failed to pay according to other loan agreements he had with PRMI, and that PRMI had the right to declare the Construction Loan Agreement in default as a result of the cross-default clause.

Accordingly, Knudson cannot establish two essential elements of his breach of contract claim, namely his own performance or PRMI's breach of the Construction Loan Agreement. Summary judgment will therefore be entered with respect to Count One of Knudson's Complaint.

### B. *Unjust Enrichment*

Before unjust enrichment may serve as a basis of recovery, three elements must be

present: (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. *E&M Sales West, Inc. v. Diversified Metal Prods., Inc.*, 221 P.3d 838, 843 (Utah Ct. App. 2009). The plaintiff bears the burden of proving all three elements by a preponderance of the evidence to sustain a claim of unjust enrichment. *Kimbal v. Kimball*, 217 P.3d 733, 748 (Utah Ct. App. 2009).

Knudson argues that PRMI was unjustly enriched because it retained the benefit of the improvements made to the Bishop Ranch Property but did not pay for those improvements. However, according to the Complaint, Knudson's subcontractors conferred the benefit of the improvements in a direct contractual relationship with Knudson, and it was Knudson who did not pay the subcontractors. (Compl. ¶ 14, Dkt. 1-1.) The benefit was conferred by the subcontractors, who are third parties to this lawsuit, and not by Knudson. Knudson cannot as a matter of law establish the first element, namely that he conferred a benefit on PRMI. *See Southern Title Guar. Co., Inc. v. Bethers*, 761 P.2d 951, 954 (Utah Ct. App. 1988) (upholding the trial court's conclusion that the plaintiff's unjust enrichment claim failed because "defendants have not been unjustly enriched at the expense of the plaintiff.")

Second, PRMI waited for two years before it instituted foreclosure proceedings, and then credit bid in an amount over one million dollars against Knudson's defaulted

**MEMORANDUM DECISION AND ORDER - 11**

obligations when it purchased the Bishop Ranch Property at foreclosure. Knudson does not claim that, during those two years, he paid his subcontractors the outstanding amounts owed. PRMI incurred a substantial loss and foreclosed upon its collateral to satisfy that loss. Knudson has not established how retention of the partially improved Bishop Ranch Property in satisfaction of an outstanding debt of over one million dollars constitutes an inequity under the circumstances.

Knudson cannot establish the essential elements of his claim for unjust enrichment, and summary judgment will be granted with respect to Count Two of Knudson's Complaint.

## CONCLUSION

Based upon the foregoing, PRMI has established that there is an absence of evidence to support Knudson's prima facie case of breach of contract and unjust enrichment. Knudson has not come forward with sufficient facts to dispute PRMI's evidence showing that PRMI did not breach the parties' agreement, or that PRMI was unjustly enriched at Knudson's expense.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Summary Judgment (Dkt. No. 20) is **GRANTED**. Defendant is directed to submit a proposed form of judgment by June 24, 2011.

DATED: June 17, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge